# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

          **Case No. 1:24-cr-48**

    **v.**

          **JUDGE DOUGLAS R. COLE**

**JAMES LOCKRIDGE,**

      **Defendant.**

## OPINION AND ORDER

James Lockridge, a criminal defendant charged with armed robbery, seeks to suppress evidence of the gun found when officers arrested him. For the reasons below, the Court **DENIES** Lockridge's Motion to Suppress (Doc. 43).

## BACKGROUND

On February 5, 2024, a Marathon gas station was robbed by a masked man armed with a silver firearm. (Gov't Resp., Doc. 44, #121). Five days later, a different Marathon gas station was robbed, again by a masked man with a silver gun. (*Id.* at #122). Then, on February 21, 2024, the original Marathon gas station was again robbed by a masked man brandishing a silver gun. (*Id.*). Responding Officers Bicknell and Allen headed to the nearby apartment building—aptly located at 911 Rogers Place—because the gunman was captured on video running there after both the first and third robberies. (*Id.*). At the apartments, Officer Allen saw Lockridge leaving a building and claimed to both recognize him and recall that he had an outstanding felony warrant. (*Id.*; Mot., Doc. 43, #108).

Then, according to Lockridge, "[b]ased solely on this recollection, the officer stopped [him]. A subsequent arrest and search of [Lockridge's] person uncovered a firearm." (Doc. 43, #108–09). Lockridge does not believe that the officer confirmed through dispatch or records that a valid felony warrant was active at the time of arrest. (*Id.* at #110).

The government's account of the arrest offers significantly more detail. According to the government, Officer Allen immediately recognized Lockridge and knew that he had an active arrest warrant. (Doc. 44, #122). "Officer Allen [then] ordered Lockridge to put his hands up and get on the ground." (*Id.*). Officer Bicknell and other officers then placed Lockridge in handcuffs. (*Id.*). During this encounter Officer Allen addressed Lockridge by name, and "explained that Lockridge had an arrest warrant." (*Id.* at #122–23). Lockridge then told the officers that he was not James Lockridge, claiming his name was actually Wilbert Issac Holley and that he was Lockridge's cousin. (*Id.* at #123). Lockridge stated that he did not have identification and instead gave the officers Holley's social security number. (*Id.*). At the police cruiser, the officers "ran this information and confirmed Lockridge's identity and that he was not Holley."[1] (*Id.*). "[O]nly after confirming his identity and that he had a valid felony arrest warrant," did the officers search Lockridge incident to arrest. (*Id.*). During that search, they found a handgun in Lockridge's waistband that "matched the gun used in the robberies." (*Id.*).

---

[1] The government does not say how they "confirmed Lockridge's identity" with Holley's social security number. Presumably, they were able to bring up photos of both Holley and Lockridge to compare.

Lockridge now moves to suppress that gun, arguing that the search violated his Fourth Amendment rights. (Doc. 43, #109). The government opposes this motion. (Doc. 44). Lockridge also filed a reply in support of his Motion. (Doc. 45). Because the parties have not requested an evidentiary hearing, the matter is now ripe for review.

## LAW AND ANALYSIS

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. To protect this right, courts will suppress "evidence obtained in violation of the Fourth Amendment [from] be[ing] used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). In most cases, Fourth Amendment rights are "preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). But various exceptions exist that can make a search "reasonable," and thus permissible under the Fourth Amendment, even without a warrant. *Id.*

One such exception is a search incident to arrest. "In general, after an individual has been arrested, officers may search the person and personal items carried by the arrestee." *United States v. Myers*, No. 3:21-cr-32, 2024 WL 37117, at *4 (S.D. Ohio Jan. 3, 2024) (citing *Riley v. California*, 573 U.S. 373, 391–93 (2014)). This search requires "'no additional justification,' beyond the establishment of probable cause for arrest." *United States v. Smith*, 549 F.3d 355, 361 (6th Cir. 2008) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

Lockridge's argument is relatively straightforward—that the officers lacked probable cause when they arrested him. (Doc. 43, #109–11). According to him, an arrest based only on an officer's "own recollection" that the arrestee has an outstanding warrant is unlawful because that warrant might have "been recalled, quashed, or was otherwise no longer valid." (*Id.* at #110). Thus, Lockridge argues that an officer cannot make an arrest "solely on memory of a warrant" and must first verify it. (Reply, Doc. 45, #126). And because the gun was found during a search incident to this unlawful arrest, it must be excluded. (Doc. 43, #111–12).

Lockridge's argument fails. It is well established—and Lockridge appears to concede, (Doc. 45, #126)— that when officers know an individual has an outstanding warrant for arrest, they have probable cause to arrest and search that suspect. *See United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005). But Lockridge basically argues that an officer cannot "know" that fact with requisite certainty unless the officer has first contemporaneously verified the warrant. (Doc. 45, #126). Lockridge points to no case law supporting this categorical requirement. Indeed, he admits "[t]here is no controlling authority." (*Id.*). This Court declines to impose such a requirement, and instead asks whether "a prudent person, or one of reasonable caution," in Officer Allen's position could reasonably believe the arrest warrant to be valid without first verifying it. *Michigan v. DeFillipo*, 443 U.S. 31, 37 (1979). That is more consistent with the general approach of the law to Fourth Amendment arrest-related issues, where reasonableness is the touchstone. *See United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996) (evidence not subject to suppression where search

occurred in connection with arrest made on reasonable but mistaken belief that the person arrested was the person named in warrant); *Dean v. City of Worcester*, 924 F.2d 364, 368 n.4 (1st Cir. 1991) ("A reasonable mistake in identification which leads to an arrest does not violate the arrestee's constitutional rights."); *Herring v. United States*, 555 U.S. 135, 138–40 (2009) (reasonable but mistaken belief that warrant remained valid means exclusionary rule does not apply to evidence obtained during search incident to arrest).

Here, the facts suggest it was reasonable for Officer Allen to rely on his knowledge of the warrant. He was familiar with Lockridge, aware of the circumstances of the warrant, and had, along with other officers, previously looked for Lockridge to arrest him on that very warrant. (Doc. 44, #124). And it was reasonable for Officer Allen to assume the warrant was still valid as it was only issued the month before. (*Id.* at #121). So, when Officer Allen detained Lockridge and put him in handcuffs, he had a reasonable basis for arresting him.[2] Indeed, other courts that have addressed this scenario have found the same thing; when an officer encounters an individual who they know to have an outstanding warrant, that officer has probable cause to arrest them without needing to first re-verify the warrant. *See United States v. Thomas*, 730 F. App'x 700, 702–03 (10th Cir. 2018) (holding that it

---

[2] It is possible that the arrest did not yet occur at the time the officers first ordered Lockridge to the ground and placed him in handcuffs. *Howell v. McCormick*, 148 F.4th 834, 850 (6th Cir. 2025) ("[W]e have held that officers may use handcuffs during *Terry* stops when the circumstances warrant."). But that is the earliest candidate for the time the arrest happened on the facts here. And at that time, as described above, the officers had a reasonable basis for arresting him. So the Court need not reach the question of whether the arrest instead occurred "after confirming his identity and that he had a valid felony arrest warrant," as the government maintains was the case. (Doc. 44, #123).

was reasonable for an officer to arrest a suspect without re-confirming a warrant that the officer had learned about a week earlier); *United States v. Hewlett*, 395 F.3d 458, 462 (D.C. Cir. 2005) (holding that officers still had probable cause to arrest a suspect on a warrant despite eleven months having passed since the officers had confirmed its existence). True, other factors could conceivably cause an arrest on a recollection of a warrant to be unreasonable—e.g., the warrant being very outdated or the officer being unfamiliar with, or mistaken about, its details—but Lockridge fails to point to any such factors here. Thus, the officers had probable cause to arrest Lockridge, and as a result the defendant has not shown that the gun the officers discovered in the search incident to that arrest should be suppressed.

## CONCLUSION

For the reasons above, the Court **DENIES** Lockridge's Motion to Suppress (Doc. 43).

**SO ORDERED.**

October 15, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**