**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**Case No. 1:24-cr-48**

**JUDGE DOUGLAS R. COLE**

**JAMES LOCKRIDGE,**

**Defendant.**

## OPINION AND ORDER

James Lockridge, a criminal defendant charged with armed robbery, seeks to suppress evidence—in particular, a cash register tray—that police recovered from an apartment building "common area" that it appears Lockridge was using (although he was not a tenant at the complex). (Doc. 56, #197) For the reasons below, the Court **DENIES** Lockridge's Motion to Suppress (Doc. 56).

## BACKGROUND

On February 21, 2024, officers from the City of Cincinnati Police Department arrested Lockridge as he was exiting an apartment building located at 911 Rogers Place. (Doc. 56, #198). Following that arrest, the officers, without a warrant, entered the building and proceeded to an unlocked room accessible to the building's residents. (*Id.*). In that "common area," officers "located and seized a cash register tray along with other personal property" belonging to Lockridge. (*Id.*).

Lockridge, although not a resident of the building, claims he regularly used that unlocked room to store personal property, and that he did so with the knowledge and permission of a building tenant. (*Id.*). Based on that, he maintains that he has a

possessory interest in the space, and the items stored there, sufficient to mount a Fourth Amendment challenge. (*Id.*). In his motion, he also requested an evidentiary hearing. (*Id.* at #205).

The government's brief in response offers more detail on the officers' search. (*See* Doc. 60, #233–35). After arresting Lockridge, they entered the unlocked apartment building he had exited from. (*Id.* at #233–34). Once inside, they "found a glove worn by the suspect during the robbery" in a "stairwell leading to the basement." (*Id.* at #234). The officers then proceeded to the basement level and encountered a locked door leading to a laundry area. (*Id.*). So, the officers knocked on a nearby apartment door. (*Id.*). That tenant voluntarily gave the officers her key, and explained that tenants had been locking the door because nonresidents "would come inside and sleep in there." (*Id.*). Once inside the common laundry area, the officers "noticed an unlocked door to a utility room." (*Id.*). There, the officers found a stolen cash register tray inside an abandoned refrigerator, along with some personal items—clothing and a toothbrush—that suggested that someone was squatting there. (*Id.*). The officers also confirmed that the laundry room was accessible and unlocked from the other side, which happened to be the side of the building Lockridge exited shortly before his arrest. (*Id.*).

The government also states that during his recorded interview, Lockridge claimed to live in Apartment 24 at 911 Rogers Place, which was not true. (*Id.*). Based on that, the government believes he was in fact "squatting in the basement utility

2

room." (*Id.*). Lockridge now acknowledges that he was "not a resident of the [b]uilding." (Doc. 56, #198).

Lockridge, for his part, did not file a reply in support of his motion or file a sworn affidavit, so it is difficult for the Court to determine if he disputes some (or even all) of the additional facts the government provides. Further compounding that problem, while Lockridge initially requested a hearing, he has since withdrawn that request. As it turns out, though, the government's additional facts don't much matter because, even under the facts Lockridge provides, he lacks standing to challenge the search.

With Lockridge's request for a hearing now withdrawn, the matter is ripe for review.

## LAW AND ANALYSIS

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. To protect this right, courts will suppress "evidence obtained in violation of the Fourth Amendment [from] be[ing] used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). But, to have standing to invoke Fourth Amendment protection against a search, a defendant "must show that he had 'a legitimate expectation of privacy'" in the area that police searched. *United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024) (quoting *Hicks v. Scott*, 958 F.3d 421, 431 (6th Cir. 2020)). That legitimate expectation comes in two parts. *Id.* "First, the person claiming Fourth Amendment protection must have 'exhibited an actual (subjective) expectation of

privacy' in the targeted area." *Hicks v. Scott*, 958 F.3d 421, 431 (6th Cir. 2020) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)). "Second, even if the person demonstrates a subjective expectation of privacy, that expectation must also be 'one that society is prepared to recognize as reasonable.'" *Id.*

The Court finds that Lockridge did not have a legitimate expectation of privacy in the apartment "common area" at either step of the analysis. For one, other than the fact that he stored items there, Lockridge offers no details suggesting that he himself subjectively believed the area to be private to him. (*See* Doc. 56, #198). Second, even assuming he did believe as much, that belief would be unreasonable. At bottom, he could not have a reasonable expectation of privacy in an unlocked common area of an apartment building, especially as a nonresident.

To expand on that a bit, in evaluating whether an expectation of privacy is reasonable, courts in this Circuit typically analyze the following factors:

> (1) whether the defendant was legitimately on the premises; (2) his proprietary or possessory interest in the place to be searched or the item to be seized; (3) whether he had the right to exclude others from the place in question; and (4) whether he had taken normal precautions to maintain his privacy.

*United States v. Dillard*, 438 F.3d 675, 682 (6th Cir. 2006). All four cut against Lockridge here. Even assuming he was a guest of an unnamed tenant as he claims, he offers no explanation for how a building resident can grant him, as a nonresident, the right to store objects in a common space, so Lockridge appears to be a trespasser rather than legitimately on the premises. And "[b]y definition, trespassers cannot have an objectively reasonable expectation of privacy in the property on which they are trespassing." *United States v. Washington*, 573 F.3d 279, 284 (6th Cir. 2009)

4

(citation omitted). Moreover, even assuming that a tenant could grant him the right to store possessions there, Lockridge certainly did not have any proprietary or possessory interest in that common area, nor a right to exclude others from the room in question. Finally, he offers no steps he has taken to maintain his privacy in the common area.

Combined, this poses an insurmountable obstacle for his efforts to suppress the results of the search. The Sixth Circuit has already found that even a *tenant* has no reasonable expectation of privacy in "a common area, open to all, in which [the tenant] had taken no steps to 'maintain his privacy.'" *United States v. Trice*, 966 F.3d 506, 514 (6th Cir. 2020) (finding a tenant to have no reasonable expectation of privacy in an unlocked common hallway of an apartment building); *see also United States v. Carriger*, 541 F.2d 545, 550 (6th Cir. 1976) (finding that, while each building tenant has a constitutionally protected interest in preventing police's "unlawful breaking and entry" into a locked building, tenants have "no right to exclude from the common hallways those who enter lawfully"). If that is true as to a tenant, it is even more so as to a person like Lockridge, who is not.

Lockridge's principal argument for a different result is that he was using the space "with the express knowledge and permission of a Building resident." (Doc. 56, #199).[1] But that does not change the analysis. As noted, he offers no authority for the

---

[1] If, as the government suggests, Lockridge was *squatting* in the utility room, even the Landlord's permission would not grant him a reasonable expectation of privacy, as his residing in a utility room would be "wrongful" under various Ohio housing regulations. *See, e.g., United States v. Guzman*, 149 F.4th 1132, 1139–42 (10th Cir. 2025) (finding that a defendant who parked his trailer on a property with the owner's express permission had no reasonable expectation of privacy because it was unlawful for him to do so); *see also* Ohio

proposition that a tenant may grant a guest an unfettered and exclusive right to use a common area for personal storage. While neither party has provided a lease from the apartment building in question, common areas are normally maintained and controlled by the landlord. *See, e.g.*, Ohio Rev. Code § 5321.04(A)(3) (requiring a landlord to "[k]eep all common areas of the premises in a safe and sanitary condition"). So it is the landlord, not tenants, who would have a right to grant access. And, beyond that, even if a tenant could grant him such access, as also noted, the remaining three factors all weigh against him.[2]

In sum, the Court concludes that Lockridge could not have had any reasonable expectation of privacy in the common area at issue here. Accordingly, he lacks standing to assert the Fourth Amendment against a search of that area.

### CONCLUSION

For the reasons above, the Court **DENIES** Lockridge's Motion to Suppress (Doc. 56).

---

Admin. Code § 5122-30-14 (listing Ohio licensure requirements for sleeping and living spaces). Because Lockridge loses on other grounds, though, the Court need not reach that issue.

[2] Moreover, even if that were not the case, Lockridge's claim also fails for another reason—another tenant, who had a right to access the common area, as all tenants do, consented to the search. (Doc. 60, #234). *United States v. Wright*, 712 F. Supp. 3d 959, 978 (E.D. Mich. 2024) ("[W]hen police gain entry to locked common areas as the guests of another tenant or through an 'obliging landlady,' they are generally legally present, and a defendant cannot complain about evidence they find or activities they observe in those areas." (citing *Carriger*, 541 F.2d at 550)).

**SO ORDERED.**

May 13, 2026
**DATE**

            **DOUGLAS R. COLE**
            **UNITED STATES DISTRICT JUDGE**

7